OPINION
{¶ 1} Appellant Tanya Kyler-Lowther appeals the grant of permanent custody of her daughter, Teuila Kyler-Lowther, to Appellee Tuscarawas County Department of Job and Family Services ("TCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} On September 8, 2003, Appellee TCDJFS filed a complaint alleging that Teuila Kyler-Lowther, born in 2002, was a neglected and dependent child.[1] The complaint included concerns that appellant had engaged in threatening behavior in the presence of the child, including screaming at social services personnel, and that her public assistance work assignments, a condition of receiving benefits, were being lost due to inappropriate behavior. Following an adjudicatory hearing on October 7, 2003, the court found Teuila to be a dependent child. A dispositional hearing was conducted on November 5, 2003. Teuila was ordered to remain in the temporary custody of TCDJFS.
 {¶ 3} In April 2005, appellant filed a motion to review her visitation orders. Following two hearings before a magistrate on May 24 and June 7, 2005, the trial court issued a judgment entry on July 14, 2005, denying appellant increased visitation with Teuila.
 {¶ 4} In the meantime, on June 22, 2005, TCDJFS filed a motion for permanent custody. A bench trial went forward on December 1, 2005. By agreement of the parties, the trial court also utilized the transcript of the May 24/June 7 hearings regarding visitation. On December 12, 2005, the trial court issued a judgment entry, with findings of fact and conclusions of law, granting permanent custody of Teuila to TCDJFS.
 {¶ 5} On January 10, 2006, appellant filed a notice of appeal. She herein raises the following two Assignments of Error:
 {¶ 6} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE CHILD CANNOT OR SHOULD NOT BE PLACED WITH HIS (SIC) PARENTS WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 7} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF APPELLANT (SIC) WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I. {¶ 8} In her First Assignment of Error, appellant challenges the trial court's conclusion that Teuila could not be placed back with her within a reasonable time.
 {¶ 9} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 10} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 11} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 12} "(b) The child is abandoned.
 {¶ 13} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 14} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 15} Ohio's present statutory scheme requires a court, in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents (see R.C. 2151.414(B)(1)(a), supra), to consider the existence of one or more factors under R.C. 2151.414(E), including whether or not "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." See R.C.2151.414(E)(1); In re Bender, Stark App. No. 2004CA00015,2004-Ohio-2268.
 {¶ 16} In the case sub judice, the main case plan elements required appellant to (1) complete a psychological evaluation and follow the corresponding recommendations; (2) attend parenting classes to learn appropriate roles and expectations; and (3) obtain employment and maintain adequate housing.
 {¶ 17} In regard to the first element, the record reveals that appellant completed three psychological evaluations and one psychiatric evaluation. The first two were with Rajendra Misra, Ph.D., who diagnosed appellant with an Axis I schizoaffective disorder. Tr. at 68.[2] Dr. Misra recommended a psychiatric evaluation and individual therapy. In October 2003, accordingly, appellant was seen by Stephen Penepacker, M.D., who disagreed somewhat with Dr. Misra and diagnosed appellant with major depression, in partial remission, and schizotypal personality. Tr. at 62. He further saw no signs of psychosis or delusions as of July 2005, and he felt appellant did not need medication. Tr. at 66, 69. He opined that appellant was "pathologically suspicious," which could result in overreacting, although not to the point of psychosis or Munchausen's syndrome. Tr. at 70-71. In addition, in regard to Dr. Misra's recommendations, appellant did attend individual counseling at Community Mental Healthcare from January 2004 to June 2004. Her counselor reported that appellant showed "stable behaviors" and enjoyed the supervised visits with Teuila. Exhibit A-13. However, appellant terminated the counseling but later reinitiated it just prior to the May/June visitation hearing. See page 6 of judgment entry.
 {¶ 18} Appellant was also evaluated by Dr. Anita Exley of the Chrysalis Counseling Center. She opined that appellant had a "very defensive style" and a tendency to distort her thoughts. She felt appellant would need consistent monitoring in order to parent. Tr. II at 100. She diagnosed appellant with Axis I schizoaffective disorder, bi-polar type. Tr. II at 208.
 {¶ 19} The second case plan element involved appellant's attendance at a parenting education course. Appellant was referred to Personal and Family Counseling Services for this purpose. According to her TCDJFS caseworker, Beth Bertini, appellant completed said program. Tr. at 10.
 {¶ 20} The third case plan objective was for appellant to obtain employment and maintain adequate housing for Teuila. Bertini testified that appellant's current living circumstances, sharing a house with her husband, Randy, Teuila's father, were "fine" and not a concern. Tr. at 13. However, appellant has had repeated problems in the past maintaining employment due to her tendencies to anger and confrontation. See GAL Report at 2.
 {¶ 21} Appellant thus contends that she has substantially completed her case plan requirements. Nonetheless, the main issue considered at this juncture in permanent custody cases is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal. In re Calvert Children,
Guernsey App. Nos. 05-CA-19, 05-CA-20, 2005-Ohio-5653, ¶ 74, quoting In the Matter of McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015. In that light, we note the record further reveals the recounting of several troubling episodes related to appellant's behavioral and mental health issues. For example, case manager Bertini testified that appellant on one occasion became overly concerned about some cold symptoms Teuila was experiencing during a supervised visit, during which time appellant telephoned 911 and had to be escorted out of the building by police officers. Tr. at 7. A medical examination later that day confirmed Teuila simply had a cold. Tr. at 8.
 {¶ 22} In another instance, Teuila's foster parents gave her a one-time dose of Dimetapp, and when appellant found out, she became "extremely obsessed" with the idea that Teuila needed more, despite repeated assurances to the contrary. Tr. at 9-10. Bertini noted that there were many more examples of such behavior, concluding that appellant seemed "very obsessed with the medical * * * concerns of her daughter and she blows them out of proportion." Tr. at 9. Bertini had been subjected to several "aggressive verbal outbursts" from appellant, and she noted that appellant's husband Randy did not see any problems with such behavior. Tr. at 13. Bertini also recounted that appellant had unreasonable expectations regarding Teuila, such as a concern that the child could not recognize all of her colors and numbers by the age of eleven months. Tr. at 16. In a similar vein, appellant repeatedly disputed recommendations to keep Teuila away from a dog, considered aggressive by Bertini, during the child's home visits; appellant instead insisted that the dog could be professionally evaluated to ascertain if it was a danger. Tr. at 12; 303-305.
 {¶ 23} Other examples were related in the testimony of Melinda Caldwell, the visitation coordinator at Personal and Counseling Services. While most of the visits went well, Caldwell recounted that at a scheduled visit on September 1, 2005, appellant and Randy appeared well after the fifteen-minute tardiness policy the agency had established. When informed that the visitation would not go forward, appellant became "verbally aggressive" with Caldwell, "stormed" out of the building, and then returned to get Randy before storming out a second time. Tr. at 81. Caldwell also expressed concerns over appellant's unrealistic expectations and her fixation with the child's health care issues. Tr. at 84.
 {¶ 24} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. The facts of this case perhaps do not rise to the level of some of the more egregious instances this Court has seen in the realm of permanent custody proceedings. However, upon a review of the evidence in light of the above statutory factors, we find the record contains clear and convincing evidence to support the trial court's determinations under R.C.2151.414(B)(1)(a) and R.C. 2151.414(E). Furthermore, although the trial court in this case chose not to rely on the "12 of 22" provision of R.C. 2151.414(B)(1)(d), we note there appears to be no dispute that Teuila was in temporary TCDJFS custody the entire time from September 2003 until the permanent custody trial of December 1, 2005. Although we have engaged in the foregoing analysis in the interest of justice, we recognize the record would also support a finding under R.C. 2151.414(B)(1)(d).
 {¶ 25} Appellant's First Assignment of Error is overruled.
 II. {¶ 26} In her Second Assignment of Error, appellant argues the trial court erred in concluding that a grant of permanent custody to TCDJFS was in the child's best interest. We disagree.
 {¶ 27} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 33} Teuila, at the time of the trial in the case sub judice, was in placed with a foster family which had expressed interest in adoption. Tr. at 217. As noted hereinbefore, the child had been in the temporary custody of TCDJFS for well over eighteen months at the time of the filing of the permanent custody motion. See R.C. 2151.414(D)(3), supra. The guardian-ad-litem report indicates that the child was "happy and content" in her foster placement. The GAL also therein noted that appellant had apparently made "marked progress" in her psychological/psychiatric treatment, but felt that appellant had reverted to her earlier hostile behavior and unwarranted fixation on Teuila's medical status. The GAL recommended permanent custody be granted in light of appellant's mental health issues and their potential impact on the child's safety.
 {¶ 34} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Mauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In re Awkal (1994),95 Ohio App.3d 309, 316, 642 N.E.2d 424. Furthermore, "[i]t is axiomatic that both the best-interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent." In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, 77165, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 75, 523 N.E.2d 846.
 {¶ 35} In the case sub judice, upon review of the record and the findings of fact and conclusions of law therein, we conclude the trial court's grant of permanent custody of Teuila to TCDJFS was made in the consideration of the child's best interests and did not constitute an error or an abuse of discretion.
 {¶ 36} Appellant's Second Assignment of Error is overruled.
 {¶ 37} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.
Wise, P.J. Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
Costs to appellant.
[1] Teuila's father, Randy Lowther, participated in the pertinent court proceedings and has filed a separate appeal of the permanent custody order. Randy was established as Teuila's father in January 2004; he and appellant thereafter were married and they have continued to reside together.
[2] Dr. Misra did not testify, but his opinions were discussed by other witnesses without objection.