OPINION
{¶ 1} Appellant, Benjamin Evans, filed this appeal from the judgment entered in the Tuscarawas County Court of Common Pleas, Juvenile Court Division, which terminated all parental rights, privileges and responsibilities of the Appellant with regard to Appellant's minor children, Rylie and Kylee Evans, and further ordered that permanent custody of the minor children be granted to the Tuscarawas County Department of Job and Family Services (hereinafter the Department).
 {¶ 2} This appeal is expedited, and is being considered pursuant to App.R.11.2(C). The relevant facts leading to this appeal are as follows:
 STATEMENT OF THE FACTS AND CASE {¶ 3} This appeal pertains to the disposition of permanent custody of Rylie Evans whose date of birth is May 21, 2002, and Kylee Evans, whose date of birth is April 7, 2003. Appellant, Benjamin Evans, is the natural father of Rylie and Kylee Evans. Lydia Evans is the natural mother of Rylie and Kylee Evans. Appellant and Lydia Evans have a total of four biological children, two of which, (Austin Gower and Auhner Evans), are not the focus of this appeal. Lydia Evans did not pursue an appeal of the trial court's judgment.
 {¶ 4} On January 4, 2005, the Department filed a complaint alleging that Austin Gower, Rylie Evans and Kylee Evans were abused, neglected and dependent children and requested temporary custody of Rylie and Kylee Evans and relative placement for Austin Gower.
 {¶ 5} The facts which gave rise to the filing of the Complaint involved an incident which occurred on or about December 31, 2004. On that evening, Austin was at his great grandmother's home and the infant sisters, Rylie (age 2 years) and Kylee (age 1 year), were left home alone while Lydia Evans went out for an evening of drinking at Bentley's night club. Meanwhile, Appellant was in Canton, Ohio, on a cocaine run.
 {¶ 6} After being contacted by family members, Officer's from the Dover Police Department responded to concerns at the Evans' home. Upon arriving, the officers entered the residence and found the two children secured in separate rooms. Rylie was secured in her bedroom by scissors which were jammed into the door to prevent it from being opened and Kylee was tied to her crib with an Ace bandage. The investigation revealed that the children had been in this condition for more than an hour. On January 1, 2005, at approximately 2:30 a.m. Lydia Evans was arrested at Bentley's Night Club and charged with child endangering. That same date, pursuant to Juv.R.6, the children were removed from the care of Lydia and Benjamin Evans. Austin remained in relative placement and Rylie and Kylee were placed in foster care.
 {¶ 7} On February 2, 2005, after the adjudicatory hearing, the magistrate found the children to be abused pursuant to R.C.2151.031(B), neglected pursuant to R.C. 2151.03(2) and dependent pursuant to R.C. 2151.04(D). Appellant failed to appear at the adjudicatory hearing. On February 24, 2005, the trial court approved and adopted the magistrate's decision.
 {¶ 8} On March 2, 2005, at the dispositional hearing, the trial court approved and adopted the Department's case plan and ordered the children to remain in their foster and relative placements. Appellant failed to appear at the dispositional hearing.
 {¶ 9} The case plan required Appellant to complete a psychological evaluation, a drug and alcohol assessment and any recommended treatment, and, an anger assessment and any recommended treatment. Appellant was also required to participate in random drug and alcohol screens and secure and maintain employment and appropriate housing. Appellant failed to complete any part of his case plan for more than six consecutive months.
 {¶ 10} On March 15, 2005, the case plan was modified to permit mother to have supervised visitation and required both parents to complete parenting education. At the time Appellant had failed to exercise any visitation with his children. Thereafter, on May 8, 2005, the case plan was modified to permit Appellant to exercise supervised visitation.
 {¶ 11} On June 6, 2005, after a review hearing the trial court ordered the parents to report for a blood screen. Appellant failed to report for the blood screen. As a result, by judgment entry entered on June 15, 2005, Appellant's supervised visitation was suspended.
 {¶ 12} In September of 2005, Appellant was convicted, sentenced and incarcerated for felony burglary. Appellant had also recently been incarcerated for driving under suspension and failure to pay costs. Essentially Appellant was incarcerated three times since the Department's case had been filed.
 {¶ 13} On October 6, 2005, Lydia gave birth to the couple's fourth child, Auhner Evans. Auhner was immediately taken into custody by the Stark County Department of Job and Family Services and was put in relative placement with Appellant's sister.
 {¶ 14} On November 10, 2005, the Department moved to modify the court's prior disposition from temporary custody to permanent custody of Rylie and Kylee Evans. As grounds, the Department stated that both parents had substantially failed to alleviate conditions leading to the removal and placement of their children in the agency's temporary custody. Specifically the motion stated that Lydia Evans had failed to comply with the case plan requirement for intensive outpatient substance abuse counseling and to address domestic violence concerns. The motion further stated that Appellant had failed to follow through with individual therapy or psychiatric treatment as recommended by his psychological assessment. The permanent custody hearing was scheduled for May 9, 2006.
 {¶ 15} On November 22, 2005, the Department filed a semi-annual administrative review report. In the report, the Department indicated that Appellant had been incarcerated since September of 2005 and would be committed to the Stark Regional Community Correctional Center (hereinafter, "SRCCC") in December of 2005. The report stated that Lydia Evan's cognitive skills were borderline with defects in comprehension, insight and judgment and that on an alcohol scale Lydia had exhibited a "problem risk" level with a 70th to 89th percent risk indicator for alcohol use and abuse. The report further stated that Rylie was enrolled in a special needs preschool, involved in therapy, and was placed in a foster home with a family trained to provide for children with special needs.
 {¶ 16} On November 28, 2005, after entering a guilty plea to one count of child endangering, Lydia Evans began serving a six-month sentence.
 {¶ 17} In December of 2005, Appellant was admitted into the Stark Regional Community Correctional Center (SRCCC) as a condition of probation for felony burglary. On February 14, 2006, Appellant was granted supervised visitation with his children and exercised visitation while residing at the SRCCC.
 {¶ 18} On February 27, 2006, Appellant was released from SRCCC. During his detention at SRCCC, Appellant participated in parents anonymous education classes and Habitat for Humanity. Appellant also completed a program entitled, "Thinking for Change" and Phases I and II of the facility's chemical dependency program. Additionally, on or about April 11, 2006, Appellant obtained employment at Lincoln Manufacturing. As a result, at the time of the permanent custody hearing, Appellant appeared to have substantially completed his case plan requirements.
 {¶ 19} On May 9, 2006, an evidentiary hearing was held with regard to the motion for permanent custody. On May 30, 2006, via judgment entry, the trial court granted permanent custody of Rylie Evans and Kylee Evans to the Tuscarawas Department of Job and Family Services.
 {¶ 20} It is from this decision that Appellant-Father of Rylie Evans and Kylee Evans appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR: {¶ 21} "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILDREN COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE TIME OR AT ALL.
 {¶ 22} "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FOUND THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN'S [SIC] BEST INTERESTS WOULD BE SERVED BY A PERMANENT CUSTODY AWARD TO THE AGENCY.
 {¶ 23} "THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY TO THE TUSCARAWAS COUNTY JFS AGENCY IS NOT SUPPORTED BY THE STANDARD OF CLEAR AND CONVINCING EVIDENCE.
 {¶ 24} "THE FINDING OF PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 25} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO THE TUSCARAWAS COUNTY JFS AGENCY."
 I, II, III, IV, V {¶ 26} In his Assignments of Error, Appellant essentially argues that the trial court erred in granting permanent custody to the Department absent clear and convincing evidence that the children could not be placed or should not be placed with either parent within a reasonable period of time and that permanent custody was in the best interest of the children. The Court shall address these assignments of error together.
 {¶ 27} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. The proof required must be clear and convincing. It is a degree of proof which is more than mere preponderance of the evidence, but not to the extent of such certainty as is required for the standard of beyond a reasonable doubt in criminal cases. State v. Scheibel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54, certiori denied (1991), 499 U.S. 961,111 S.Ct. 1584, 113 L.Ed.2d 649. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 28} A parent has a "fundamental liberty interest in the care, custody, and management of his or her child" Santosky v.Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599. The Ohio Supreme Court has stated that "[p]ermanent termination of parental rights has been described as `the family equivalent of the death penalty in a criminal case' * * * Therefore, parents `must be afforded every procedural and substantive protection the law allows.'" In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680 quoting In re Smith (1991),77 Ohio App.3d 1, 16, 601 NE.2d 45. However, the parent's rights are not absolute. Instead, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principal to be observed.'" In re Cunningham (1979), 59 Ohio St.2d 100, 106,391 N.E.2d 1034, quoting In re R.J.C. (Fla.App. 1974), 300 So.3d 54, 58. Accordingly, the state may terminate parental rights when the child's best interest demands such action. In reShifflet, Athens County App. No. 06CA13, 2006-Ohio-3576.
 {¶ 29} There are two ways that an authorized agency may seek to obtain permanent custody of a child under Ohio law. The agency may first obtain temporary custody and then subsequently file a motion for permanent custody, or the agency may request permanent custody as part of its original abuse, neglect, or dependency complaint. See R.C. 2151.413, R.C. 2151.27(C), and2151.353(A)(4). In this case, the Department filed a motion seeking permanent custody pursuant to R.C. 2151.353(A)(4) as a modification of the original disposition.
 {¶ 30} Pursuant to R.C. 2151.35 and Juv.R.29 and 34, proceedings involving the termination of parental rights must be bifurcated into separate adjudicatory and dispositional hearings. See, In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,479 N.E.2d 257. Once a court adjudicates a child abused, neglected or dependent, R.C. 2151.353(A)(4) permits the court to commit a child to the permanent custody of a public children service agency "if the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child."
 {¶ 31} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. The statute states in relevant part as follows:
 {¶ 32} "In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent:
 {¶ 33} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 34} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 35} "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03
of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 36} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 37} `(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 38} "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22
or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02,2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12,2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321,2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12,2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11
of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 {¶ 39} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 40} "(a) An offense under section 2903.01, 2903.02, or2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 {¶ 41} "(b) An offense under section 2903.11, 2903.12, or2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 42} "(c) An offense under division (B)(2) of section2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 {¶ 43} "(d) An offense under section 2907.02, 2907.03,2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 44} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 45} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 46} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
 {¶ 47} "(10) The parent has abandoned the child.
 {¶ 48} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 49} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 50} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 51} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 52} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 53} "(16) Any other factor the court considers relevant.
 {¶ 54} A parent's past history is a factor which may be considered by the court as an indicator as to whether a child should be placed with a parent within a reasonable period of time. In other words, if the past history is likely to predict a recurrence of the situation which initially threatened the health and safety of the child, then a child should not be caused to endure the inevitable in order to give a parent the opportunity to prove suitability. The law does not require a court to gamble with a child's welfare. In Re East (1972), 32 Ohio Misc. 65,69, 288 N.E.2d 343, 346.
 {¶ 55} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C.2151.414(D). These factors are as follows:
 {¶ 56} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 57} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 58} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ending on or after March 18, 1999;
 {¶ 59} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 60} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 61} In this case, the trial court found that the minor children could not be placed with either parent at this time or within a reasonable period of time. The trial court further found that the grant of permanent custody was in the minor children's best interest. Essentially, Appellant contends that the trial court's decision is against the manifest weight of the evidence. We disagree.
 {¶ 62} In the case sub judice, at the permanent custody hearing, Appellant argued that he had substantially completed his case plan requirements and requested an additional six months to work toward the reunification of his family. The trial court acknowledged that Appellant had shown an "extreme, positive change". The trial court further stated that great contemplation occurred prior to rendering the decision to grant permanent custody. The trial court concluded that the ultimate issue was not whether Appellant substantially completed the case plan but rather whether Appellant's progress was sufficient to overcome his own past, his wife's alcohol abuse and other parental deficits as well as "the horrendously dangerous circumstances" from which the children were removed.
 {¶ 63} In the statement of facts and conclusions of law, the trial court found and the record supports, that despite diligent efforts by the Department, and a recent effort by Appellant and Lydia Evans, that the history of the parents continued to establish the existence of potential danger which warranted the grant of permanent custody.
 {¶ 64} At the time of the permanent custody hearing, Lydia Evans was serving her six-month sentence for the child endangering charge that stemmed from the December 31, 2004, incident which resulted in the agency's involvement. During her incarceration, Lydia was unable to follow through with visitation and the recommended individual therapy. Prior to her incarceration, Lydia has continually failed to obtain and maintain employment and obtain adequate housing. Finally, Appellant stated that he and Lydia had decided to live together and raise their children but admitted that Lydia was not capable of handling the children on her own.
 {¶ 65} At the time of the permanent custody hearing, Appellant was twenty-nine years of age. Appellant admitted that he has been drug and alcohol involved since he was approximately sixteen years of age. Appellant admitted to having eight or nine episodes of incarceration since the age of twenty which included two felony convictions and further admitted that three of the incidents of incarceration occurred after this case was initiated.[1] Appellant's drug activity and criminal convictions had led to repeated incarceration.
 {¶ 66} Appellant had a history of failed attempts at drug rehabilitation. In 1997, Appellant was sentenced to a commitment at SRCCC, completed the program, and remained drug free for approximately four years. After losing a job, he began to use drugs and alcohol to self-medicate. Appellant has been involved in numerous out-patient drug programs which have been unsuccessful. Appellant admitted that his inability to complete case plan requirements for nearly six months was due to drug involvement. Appellant had only recently completed Phases I and II of SRCCC's chemical dependency program and, at the time of the permanent custody hearing, had not displayed a long term ability to remain drug free.
 {¶ 67} Additionally, Appellant's psychological evaluation diagnosed Appellant as being bipolar with an attention deficit hyperactivity disorder (ADHD). Appellant admitted that he had recently begun prescription medication and individual counseling for the disorders but readily admitted he could not predict the future success of the treatment.
 {¶ 68} The caseworker testified that she does not doubt that these parents love their children. However, she has reservations about their ability to maintain a stable environment. The caseworker also expressed concern about the parents' ability to put the children's' needs before their own. Specifically, the caseworker stated that their relationship had a history of being problematic, involving drug use, and "a lot of other inappropriate things." She further testified that she was concerned that neither parent became motivated to work toward reunification until the Department filed a motion seeking permanent custody. In conclusion, she testified that she believed permanent custody was in the best interest of the children and was the best means to provide for their long term safety and stability.
 {¶ 69} On May 9, 2006, the Attorney Guardian Ad Litem filed a guardian's report. In the report, the guardian indicated that Rylie and Kylee have remained in the same foster home since January of 2005. She stated that the children have bonded with the foster parents and have made "great progress" in foster care. She stated that the foster parents were willing to adopt the children and provide them with a stable home environment. The Guardian stated that although the Appellant had recently completed SRCCC, both parents had been incarcerated for extended periods of time during the pendency of the case and neither parent had been able to progress beyond supervised visits with their children. For these reasons, the guardian concluded that it would be in the children's' best interest to be placed in the permanent custody of the Tuscarawas County Department of Job and Family Services.
 {¶ 70} Although the trial court recognized Appellant's efforts toward reunification, it was obligated to consider the parents' past history. The trial court simply could not ignore Lydia Evans' alcohol abuse, her conviction for child endangering and the horrendous facts which gave rise to this case. Nor could the trial court ignore Appellant's long history of drug involvement and failed rehabilitation; repeated incarceration; initial failure to actively exercise visitation; and failure to engage in the case plan for more than six months. The history of these parents displayed a strong likelihood of placing these children in harm's way.
 {¶ 71} A parent's compliance with the reunification plan without more does not entitle a parent to custody. In the Matterof McKenzie (Oct. 18, 1995), Wayne App. No. 95CA0015; See also,In re Higby (1992), 81 Ohio App. 3d 466, 611 N.E.2d 403; Inthe Matter of Kyler-Lowther, Tusc. App. No. 2006AP 01 0005,2006-Ohio-4836. Although evidence regarding a parent's compliance with a case plan may be helpful in determining the proper placement for a child, the ultimate issue is the child's best interest. McKenzie, supra.
 {¶ 72} For these reasons, although Appellant made an effort to comply with the case plan, we find that the factors, taken together and considered by the trial court, constitute competent credible evidence, that the children can not and should not be placed with either parent within a reasonable period of time and that granting permanent custody to the Tuscarawas Department of Job and Family Services is in the best interest of the children. Accordingly, we find that the trial court's decision was neither an abuse of discretion or against the manifest weight of the evidence.
 {¶ 73} Appellant's Assignments of Error are overruled.
 {¶ 74} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.
Boggins, J. Wise, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For reasons stated in the Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, is affirmed.
Costs to Appellant.
[1] In 1997, Appellant was charged with one count of felony corruption of a minor. The charges arose form his relationship with Lydia who was thirteen years of age at the time and Appellant was nineteen years of age. As a result of the relationship, their son, Austin Gower, was conceived.