[Cite as *Rownd v. Marcelli*, 2016-Ohio-7142.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| ROBERT ROWND, et al. | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiffs-Appellees | Hon. Patricia A. Delaney, J. |
| | Hon. Carol Ann Robb, V.J., (Sitting by |
| -vs- | Supreme Court Assignment) |
| | |
| STEVEN P. MARCELLI | Case No. 2015 CA 00154 |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2014 JCV 00880


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     September 30, 2016


APPEARANCES:

For Plaintiffs-Appellees

JILL C. McQUEEN
JACK B. COOPER
DAY KETTERER, LTD
200 Market Avenue North, Suite 300
Canton, Ohio 44702

For Defendant-Appellant

TRACEY A. LASLO
COURTNEY S. BALDWIN
325 East Main Street
Alliance, Ohio 44601

*Wise, P. J.*

{¶1} Defendant-Appellant Steven P. Marcelli appeals the decision of the Stark County Court of Common Pleas, Juvenile Division, which approved a magistrate's decision scheduling visitation time between his minor daughter, S.M., and the child's maternal grandparents, Plaintiffs-Appellees Robert and Gail Rownd. The relevant facts leading to this appeal are as follows:

{¶2} The child at the center of this case is S.M., born in 2007 to appellant and the late Lora "Lori" Marcelli, who were married on December 31, 2004. At the time of said marriage, both had children (now adults) from previous relationships: Lori had a ten-year-old daughter and a nine-year-old son, while appellant had a nine-year-old son.

{¶3} At first, Lori's parents (appellees herein, Robert and Gail Rownd) were involved in S.M.'s life. However, based on what the trial court has termed a "falling out of sorts" between appellees and Lori at some point in 2008, an estrangement developed between the mother and maternal grandparents. Moreover, unfortunately, in 2011, when S.M. was only four years old, Lori was diagnosed with cancer, and she passed away less than a year later.

{¶4} Following Lori's initial diagnosis, there was a period of reconciliation, but this ended in October 2012, after Lori's death, when S.M. had her last informal visit with the Rownds.

{¶5} Just under two years later, on August 27, 2014, Appellees Robert and Gail Rownd, as the maternal grandparents of S.M., and Robert Harrison (aka "Harry") Weitendorf, as the adult half-brother of S.M., jointly initiated an action pursuant to R.C.

3019.11 in the Stark County Court of Common Pleas, Juvenile Division, to establish visitation with S.M., at that time age seven.[1]

{¶6} Subsequent to a pre-trial on February 12, 2015, the matter was set for a trial to the magistrate on April 16, 2015, which went forward as scheduled. Attorney Melissa Pitinii, the court-appointed guardian ad litem, participated in the proceedings, recommending that appellees begin a phased-in supervised visitation arrangement. Also, an *in camera* interview with S.M. was conducted by the magistrate on April 28, 2015.

{¶7} On May 1, 2015, the magistrate issued her written decision, finding in pertinent part that it was in the best interest of S.M. to commence grandparent visitation time. The magistrate specifically recommended that appellees (maternal grandparents) would begin with off-site supervised visitation every other Saturday from 11:00 AM to 2:00 PM. After four such visits without any incidents, the time on the supervised visits was to be extended to a period of every other Saturday from 11:00 AM to 2:30 PM. After six such visits, the time was to be extended to every other Saturday from 10:00 AM to 3:00 PM. Additional recommendations were made as to provisions for medical emergencies, Thanksgiving and Christmas, and other issues.

{¶8} On May 12, 2015, appellant filed objections to the magistrate's decision under Civ.R. 53. A notice of hearing on appellant's objections was issued for July 14, 2015. On that date, the trial court heard arguments of counsel and an oral statement by the guardian ad litem.

---

[1] Harry Weitendorf has had limited recent involvement in the case, as the record indicates he is now serving in the military.

{¶9} On July 28, 2015, the trial court issued a judgment entry overruling appellant's objections and adopting the decision of the magistrate, finding *inter alia* that the magistrate had "balanced Father's parental rights with S.M.'s right to have a connection with her maternal history through a relationship with the grandparents." Judgment Entry at 1.

{¶10} On August 14, 2015, the trial court denied appellant's request for a stay of the above order pending appeal. This Court also denied appellant's request for stay on September 16, 2015.

{¶11} Appellant filed a notice of appeal on August 21, 2015. He herein raises the following sole Assignment of Error:

{¶12} "I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING GRANDPARENT VISITATION BY (1) FAILING TO AFFORD SPECIAL WEIGHT TO FATHER'S WISHES THAT MATERNAL GRANDPARENTS NOT HAVE VISITATION WITH HIS DAUGHTER AND (2) FINDING THAT VISITATION IS IN [S.M.'S] BEST INTEREST.

I.

{¶13} In his sole Assignment of Error, appellant contends the trial court abused its discretion in awarding grandparent visitation regarding his daughter. We disagree.

### Standards of Review

{¶14} Decisions regarding child visitation generally lie within the trial court's sound discretion. *See Day v. Day,* 5th Dist. Ashland No. 04 COA 74, 2005–Ohio–4343, ¶ 28 (additional citations omitted). This abuse of discretion standard applies in appellate review of a trial court's grant of grandparent visitation and the court's analysis of the statutory

best interest factors. *See In re I.R.H.*, 7th Dist. Mahoning No. 13 MA 158, 9 N.E.3d 529, 536, 2014-Ohio-1180, ¶ 35. However, the trial court's discretion must be exercised in a manner which best protects the interests of the child. *In re: Whaley* (1993), 86 Ohio App.3d 304, 317, additional citations omitted. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶15} A parent has a fundamental liberty interest in the care, custody, and management of his or her child. *See In re Gower/Evans Children,* 5th Dist. Tuscarawas No. 06AP060034, 2006-Ohio-5676, 2006 WL 3071339, ¶ 28, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. However, " 'it is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.* (Fla.App.1974), 300 So.2d 54, 58. *See*, *also*, *DiDonato v. DiDonato*, 5th Dist. Tuscarawas No. 2015 AP 09 0055, 2016-Ohio-3129, ¶ 39.

{¶16} In *Troxel v. Granville* (2000), 530 U.S. 57, 64, 120 S.Ct. 2054, 2059, the United States Supreme Court stated: "Because grandparents and other relatives undertake duties of a parental nature in many households, States have sought to ensure the welfare of the children therein by protecting the relationships those children form with such third parties. The States' nonparental visitation statutes are further supported by a recognition, which varies from State to State, that children should have the opportunity to

benefit from relationships with statutorily specified persons - for example, their grandparents. * * *."[2]

**{¶17}** Nonetheless, the United States Supreme Court also recognized in the *Troxel* opinion that the parents' interest in the care, custody and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by [the] Court." *Id.* at 65.[3] The Ohio Supreme Court has determined that grandparents have no constitutionally protected right of association with their grandchildren. *See In re Schmidt* (1986), 25 Ohio St.3d 331, 336, 496 N.E.2d 952; *In re H.W.*, 114 Ohio St.3d 65, 67, 2007-Ohio-2879, ¶ 9.

**{¶18}** The Ohio Revised Code contains at least three main subsections governing non-parent visitation with minor children. *See In re C.C.,* 2nd Dist. Montgomery No. 21707, 2007-Ohio-3696, ¶ 5, citing *In re E.H.,* 9th Dist. Lorain No. 04CA008585, 2005-Ohio-1952. However, the statute at issue in the case *sub judice* is R.C. 3109.11, which states in pertinent part as follows:

**{¶19}** "If either the father or mother of an unmarried minor child is deceased, the court of common pleas of the county in which the minor child resides may grant the parents and other relatives of the deceased father or mother reasonable companionship or visitation rights with respect to the minor child during the child's minority if the parent or other relative files a complaint requesting reasonable companionship or visitation rights and if the court determines that the granting of the companionship or visitation rights is in

---

[2] Per Justice O'Connor, with the Chief Justice and two Justices concurring, and with two Justices concurring in the result.

[3] Per Justice O'Connor, with the Chief Justice and two Justices concurring, and with two Justices concurring in the result.

the best interest of the minor child. In determining whether to grant any person reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section."

{¶20} Furthermore, R.C. 3109.051(D) provides the following factors that a trial court shall consider in determining parenting time or visitation to a parent (under R.C. 3109.051 or R.C. 3109.12) as well as companionship or visitation rights to a grandparent, relative, or other person (under R.C. 3109.11 or R.C. 3109.12):

(1)     The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child; (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence; (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; (4) The age of the child; (5) The child's adjustment to home, school, and community; (6) If the court has interviewed the child in

chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court; (7) The health and safety of the child; (8) The amount of time that will be available for the child to spend with siblings; (9) The mental and physical health of all parties; (10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation; (11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child; (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a

neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child; (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (14) Whether either parent has established a residence or is planning to establish a residence outside this state; (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court; (16) Any other factor in the best interest of the child.

{¶21} In *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, 1166, the Ohio Supreme Court considered Ohio's non-parental visitation statutes in light

of the constitutional issues set forth in *Troxel*, *supra*. The Court held in pertinent part as follows: "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation made pursuant to R.C. 3109.11 or 3109.12." *Id.*, at paragraph one of the syllabus.

*Analysis*

**{¶22}** Although appellant-father in the case *sub judice* has raised a number of sub-issues in his argument, which have been thoroughly briefed by both sides, the two chief questions before us are these: 1. Did the magistrate and trial court, in deciding to award appellees scheduled grandparent visitation time, properly give "special weight" to appellant's and the late mother's wishes as required by *Harrold*, *supra*. 2. Did appellees meet their burden to show grandparent visitation was in S.M.'s best interest?

**{¶23}** Juv.R. 40(D)(3)(a)(ii) states in pertinent part that "[s]ubject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law. ***." In the case *sub judice*, the record does not indicate that either side requested findings of fact and conclusions of law, as the magistrate *sua sponte* made the effort of setting forth her reasoning in a six-page decision with thirty-four findings of fact, followed by conclusions of law and an eleven-paragraph section detailing the logistics of the visitation order.

**{¶24}** We have determined that the proper approach in our present opinion, in the interest of judicial economy, is to analyze appellant's above two-pronged argument and the pertinent sub-issues while keeping the structure of the pertinent R.C. 3109.051(D) factors at the center of our review.

### *Wishes and Concerns of the Parents (R.C. 3109.051(D)(15))*

**{¶25}** In *Harrold*, *supra*, the Ohio Supreme Court additionally stated: "Nothing in R.C. 3109.11, 3109.12, or 3109.051(D) prevents the trial court from giving special weight to the parent's wishes and concerns regarding visitation. In fact, special weight is *required* by R.C. 3109.051(D)(15), since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation. This requirement is not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining a child's best interest in the visitation context. ***." *Id.* at ¶ 43 (emphasis added). On the other hand, the Court noted that " *** the United States Supreme Court plurality [in *Troxel*] did not declare [the parental wishes] factor to be the sole determinant of the child's best interest. *Id.* at ¶ 44.

**{¶26}** In regard to this factor of parental wishes and concerns in the present matter (R.C. 3109.051(D)(15), *supra*), the magistrate found that during the first estrangement period of 2008 to 2011, appellees had "almost no involvement with S.M.," by edict of appellant and Lori. *See* F.F. 5. The magistrate also found that certain emails in that time frame suggested Lori's concerns that appellees did not respect parental "crime and punishment policies." F.F. 6. It was also found via emails that appellees were effectively being cut off as to communication and time with S.M. and her half-siblings, even as to receipt of Christmas gifts. F.F. 8. The magistrate then referenced that after Lori's 2011 cancer diagnosis, appellees began enjoying "substantial time" with S.M. in their home. F.F. 11. In obvious reference to the incident in October 2012 (slightly less than a year after Lori's passing), the magistrate determined that appellant had "cut the MGP's off from

any contact with S.M. after he picked her up and she seemed upset and silent." F.F. 13. Thus, because appellees were "acting oddly" at the conclusion of that last voluntary visit, appellant "has simply chosen to keep S.M. away from them for the good of S.M." F.F. 15. The magistrate also noted appellant's feelings expressed in his testimony that appellees are manipulative and inappropriate for visits with the child. F.F. 16. Furthermore, "[f]ather testified that he does not believe the MGP's have gotten over their grief, and that he is afraid they would revisit that grief upon S.M., taking her to a 'dark place.'" F.F. 18. Finally, because of the involvement of the child's paternal grandparents and her step-grandparents, appellant "concludes S.M. does not need any additional grandparent relationships." F.F. 19.

**{¶27}** Appellant insists the magistrate failed to recognize several parental concerns, as brought out in the testimony, regarding the potential of appellees gaining visitation with S.M. While the magistrate did state in her conclusions of law that she had "considered the wishes of S.M.'s Father ***" (Decision at 5), there is, for example, no discussion in the decision of appellees' own admissions that they refused to respect parental rules at their home when visiting with their grandchildren, including S.M.'s half-siblings. In that vein, appellant points out that no specific mention was made of a previous situation involving appellees' alleged permissive treatment of Harry (S.M.'s now-adult half-brother) during one of his visits, at a time when he had been "grounded" by appellant and Lori. Likewise, there was no discussion of an incident, prior to Lori's passing, when appellees took the girl for her first haircut despite clear instructions from Lori not to do so. Appellant also contends the magistrate's decision was dismissive of his concerns about S.M.'s adverse reaction to appellees after her last pre-litigation visit with them in October

2012. As indicated above, the incident was indeed referenced in the decision, but the magistrate made the finding that "Father never once inquired of the MGP's about that last visit," despite evidence that appellees have apparently never offered appellant an explanation regarding what had occurred or asked to see the child after that incident, prior to filing their court action. Finally, appellant notes the magistrate did not mention or analyze appellant's opinion that the instant action was in retaliation to a separate legal action related to the administration of a family trust, nor was there any reference to Lori's decision before her death to add a will provision directing that appellees not obtain guardianship of S.M.

{¶28} In adopting the magistrate's decision, the trial court stated that both it and the magistrate were "aware of [the *Harrold*] mandate and have given special weight to the Father's wish that the child not have a relationship with the Grandparents." Judgment Entry, July 28, 2015, at 1. We recognize that in grandparent visitation disputes "*** there must be some meaningful rationale given for either abiding by or overriding the wishes of the parent." *Celek v. Celek*, 1st Dist. Hamilton No. C-081117, 2009-Ohio-4990, ¶ 10. Nonetheless, the general rule still stands in visitation matters that "[a] reviewing court will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary." *See Quint v. Lomakoski*, 2nd Dist. No. 2005 CA 111, 167 Ohio App.3d 124, 128–29, 2006-Ohio-3041, ¶ 12, citing *Minoughan v. Minoughan,* 2nd Dist. Montgomery No. 18089, 2000 WL 799737; *In re DeCara*, 11th Dist. Portage No. 2001-P-0088, 2002-Ohio-6584, ¶ 10.

{¶29} Upon review, despite the above points raised by appellant, we hold the magistrate's decision and trial court judgment entry adopting same evince sufficient

"special weight" consideration and analysis of the factor of parental wishes and concerns under R.C. 3019.051(D)(15).

<u>*Additional Factors (R.C. 3109.051(D))*[4]</u>

**{¶30}** Appellant further questions whether the magistrate's decision provided sufficient rationale for finding grandparent visitation would be in S.M.'s best interest. While it is undisputed that the burden was on appellees to prove best interests, we reiterate that our appellate standard of review in this instance is abuse of discretion. The Ohio Supreme Court has stated: "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

**{¶31}** A recurrent assertion in appellant's brief is that in regard to the "prior interaction and interrelationships of the child" (R.C. 3109.051(D)(1)), appellees have a history of undermining parental authority. For example, as set forth above in our discussion of the "parental wishes" issue, emails between mother and maternal grandmother in the 2008-2011 time frame suggested Lori's concerns that appellees did not respect the parents' disciplinary boundaries, and appellees at one point took S.M. for

---

[4]    Subsections (D)(11) through (D)(14) do not appear to be applicable in the present matter.

her first haircut after Lori specifically directed that this was not to occur. However, the magistrate recognized that appellant had cut appellees off from contact with the child as a result of the October 2012 visit, and never followed up with any inquiries of appellees as to what happened.

{¶32} The magistrate also considered the factor of geography and distance (R.C. 3109.051(D)(2)) and "[did] not consider the 20-mile distance between MGP's and Father's homes to present any real obstacle." Decision at 4. The magistrate was also clearly familiar with S.M.'s age and its importance in introducing a visitation schedule (R.C. 3109.051(D)(4)).

{¶33} In regard to S.M.'s schedule (R.C. 3109.051(D)(3)) and her adjustment to home, school, and community (R.C. 3109.051(D)(5)), appellant concedes that the magistrate considered these factors, but he contends the trial court improperly "dismissed these concerns" and did not properly weigh the child's pre-existing visitation time with her adult half-sister (*see*, *also*, R.C. 3109.051(D)(8)), her extracurricular activities (some of which are on weekends), and her time with other family members and her step-mother (evidence was adduced that S.M. often accompanies her step-mother to work on Saturdays, where she often gets "celebrity" treatment by the employees). Appellant also maintains that the magistrate failed to adequately account for S.M.'s wishes about spending time with appellees (R.C. 3109.051(D)(6)). Although the statute focuses on the child's wishes "as expressed to the court," we note both the guardian ad litem and appellant testified that S.M. had expressed a desire not to have visitation with appellees. *See* Tr. at 11, 56. This Court has further been provided with the sealed transcript of the *in camera* interview, and we have reviewed same for what the child revealed on this point,

as well as others.[5] Nonetheless, we are compelled to note that the magistrate, from the position of observing the pertinent participants first-hand, found S.M. to be "very bright" and "engaging" overall, but she concluded that "[s]eparate from any questionable memory presentation, it was evident that S.M. had been prepared for the *in camera* interview." Decision at 4.

{¶34} Finally, regarding the health and safety of the child and the mental and physical health of the parties (R.C. 3109.051(D)(7) and (D)(9)), the magistrate determined that there was "zero evidence" to suggest that S.M.'s health and safety would be at risk due to appellees' presence. Decision at 5. Appellant presently urges that the testimony of maternal grandmother (Appellee Gail Rownd) was "disjointed and rambling," even though she confirmed that appellees made no attempt to visit with S.M. after the falling out in 2012. While the magistrate in fact admonished Ms. Rownd at several points in her cross-examination testimony to wait for the attorney to put forth a question before responding, the magistrate ultimately found no evidence of any mental health issues. Decision at 5.

## *Conclusion*

{¶35} Upon review of the record in this matter, we find no merit in appellant's claims that the magistrate and trial court judge failed to fully consider the fundamental visitation issues placed before them. Our review of the magistrate's decision suggests to us at least four significant components to her reasoning process: The conclusion that

---

[5] This Court has consistently interpreted the pertinent sections R.C. 3109.04(B) such that *in camera* interviews are to remain confidential. *See Wallace v. Wallace*, 5th Dist. Stark No. 2014CA00182, 2015-Ohio-1617, f.n.1; *Lawson v. Lawson*, 5th Dist. Licking No. 13-CA-8, 2013-Ohio-4687, ¶ 56; *Myers v. Myers,* 170 Ohio App.3d. 436, 2007–Ohio–66, ¶ 46; *Linger v. Linger* (June 30, 1993), 5th Dist. Licking No. 92–CA–120, 1993 WL 274318.

despite the two significant periods of intergenerational estrangement in this child's young life, appellees have at least been part of S.M's life in the past, that appellees do not pose any health or safety concerns to the child, that appellees do not present with any criminal or child protective services history or mental health issues, and that the report and testimony of the guardian ad litem supported an initiation of grandparent visitation. While appellant's brief covers nearly every conceivable facet of the sole assigned error before us, in the end his patent disagreement with the trial court's results does not lead us to a conclusion that the magistrate and trial court failed to properly consider the pertinent statutory factors, including the special weight to be given R.C. 3109.051(D)(15), and we hold the judgment of the trial court and its accompanying adoption of the magistrate's decision did not constitute an abuse of discretion.

{¶36} Appellant's sole Assignment of Error is therefore overruled.

{¶37} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Robb, J., concur.

JWW/d 0914