[Cite as *Doughty v. Doughty*, 2019-Ohio-974.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| MEREDITH BOISE DOUGHTY | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 18 CAF 05 0040 |
| NOAH B. DOUGHTY | : | |
| | : | |
| Defendant-Appellee | : | OPINION |


CHARACTER OF PROCEEDING:  Civil appeal from the Delaware County
Court of Common Pleas, Domestic
Relations Division, Case No. 12 DRA 04
0171

JUDGMENT:  Affirmed


DATE OF JUDGMENT ENTRY:  March 19, 2019


APPEARANCES:

For Plaintiff-Appellant  For Appellee Denise Ferguson

ELIZABETH GABA  CARLOS CRAWFORD
1231 East Broad Street  40 Sandusky Street, Suite 202
Columbus, OH 43205  Delaware, OH 43015

*Gwin, P.J.*

{¶1} Appellant appeals the April 27, 2018 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, overruling her objections to and adopting and approving the magistrate's decision of February 14, 2018.

*Facts & Procedural History*

{¶2} In April of 2012, Meredith Doughty ("Mother") filed a complaint for divorce and action to establish paternity of her daughter, A.D., born July 7, 2005, in the Delaware County Common Pleas Court, Domestic Relations Division. Father Noah Doughty ("Father") signed and filed a waiver of rights under R.C. 3119.961 and acknowledgement of paternity of A.D. Mother and Father were not married at the time of A.D.'s birth, but were subsequently married on January 2, 2010.

{¶3} The final divorce decree on June 21, 2012 provides that Mother is the sole residential parent and sole legal custodian of A.D. Father was awarded parenting time every other week-end, but the decree states his parenting time shall be immediately suspended if he abuses drugs or alcohol and until he has been clean and sober for three months. The divorce decree also incorporates the statutory provision of R.C. 3109.051(G), requiring the residential parent to file a notice of intent to relocate with the court and provide a copy to the non-residential parent if the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree.

{¶4} On March 3, 2017, paternal grandmother Denise Ferguson ("Ferguson") filed a motion to be made a third-party defendant and motion for visitation with A.D.

pursuant to either R.C. 3109.12(A) and/or R.C. 3109.51(B)(1). Ferguson filed an amended motion on March 28, 2017 to correct procedural issues.

{¶5} The magistrate held a hearing on Ferguson's motion on August 25, 2017. Ferguson testified it has been five years since she has seen A.D., but when A.D. was born until she was seven years old, Ferguson had a very close relationship with her. Ferguson stated she took care of A.D. for four years, A.D. celebrated birthdays at her house, spent the night there, and was with her at least fifty percent of her life until she was seven years old. Ferguson testified Mother threatened her and told her that if Ferguson told Father that Mother was taking A.D. to Key West, Ferguson would never talk to A.D. again. Ferguson stated Mother did let her speak to A.D. a few times after they moved, but then it was totally cut off and Mother changed her number. Ferguson testified she just recently found A.D. after searching for five years.

{¶6} Ferguson has another grandchild who is the same age as A.D. who lives with her. Ferguson recently tracked A.D. down and went to her school to see her. She saw A.D., hugged her, told her she missed her, and that she had not forgotten about her. Ferguson returned to the school two days later. Mother saw her there, was angry, told Ferguson to leave A.D. alone, and called the police. Ferguson testified Mother never gave her reasons why she couldn't see A.D.

{¶7} On cross-examination, Ferguson admitted Father had a significant drug problem. Ferguson stated Mother also had a drug problem. Ferguson confirmed that Father did not show up for the final divorce hearing because he was on heroin. Ferguson stated Mother did not give her the new address in Florida, but Ferguson's niece moved down there with Mother for a period of time, so Ferguson was able to get A.D. a Christmas

gift. Ferguson confirmed that in 2014, the police were called to her home because her other son was visiting and overdosed and also confirmed Father was charged with felony drug possession. Ferguson testified Father lives at the Salvation Army. Ferguson stated she did not file the motion so Father could get visitation.

{¶8} On re-direct, Ferguson testified she filed her motion because she loves A.D. and misses her and wants to be there for her.

{¶9} Mother testified she filed for divorce from Father in 2012 because he was on heroin. Father did not show up for the divorce hearing because he was strung out. Mother stated Father has been charged with several counts of drug possession and a DUI. Mother stated she notified Ferguson she was moving out of state. Mother testified A.D. did spend a lot of time with Ferguson and they were all very close. Mother stated the only reason why Ferguson doesn't see A.D. is because Father and his brother were always welcome at Ferguson's home, no matter if they were on drugs or not.

{¶10} Mother testified the school called her because A.D. went to the office after seeing Ferguson and Mother made a police report. Mother's goal is for her and A.D. to be left alone.

{¶11} On cross-examination, Mother testified she does not want A.D. to have any relationship with Ferguson. She thinks it is healthy for A.D. not to have a relationship with Ferguson and Father, even if Father is clean, because Father always goes back to heroin. Mother stated she did avoid contact with Ferguson because the first phone call A.D. had with Ferguson after moving to Florida, not even two minutes into the conversation, Ferguson put Father on the phone after Mother told her the only request was not to have

Father speak to A.D. From her understanding of the divorce decree, Father was not allowed to have any contact, including phone calls, with A.D., unless he was clean.

{¶12} Mother stated Ferguson was a good grandmother. Mother told Ferguson if she allowed Father to have any contact with A.D., Ferguson would never speak to A.D. again. Mother told Ferguson this prior to the conversation when Mother allowed Ferguson to speak to A.D. for the last time. Mother's concern is that A.D. feels safe and protected. Mother is aware Ferguson has custody of two other grandchildren because the children's mother overdosed on drugs in front of them. Mother last had contact with Father in July of 2017 when he showed up at her house and she called the police. Mother testified she is not addicted to drugs, but has written prescriptions from her doctor after three back surgeries.

{¶13} Upon questioning by the magistrate, Mother stated she moved to Florida in 2012 and returned to Hilliard, Ohio in 2013. After a year, Mother and A.D. moved to their current address in Dublin. Father stated he moved to California in April of 2013 and returned to Ohio in December of 2013. Father testified he has not lived with Ferguson since 2014.

{¶14} After the evidentiary hearing, Mother filed a notice of relocation and change of address to reflect her current address.

{¶15} The magistrate issued a decision on February 14, 2018. The magistrate first found that Mother did not comply with the statutory provisions and provision in the decree requiring her to keep the court and Father advised of her current address. The magistrate found R.C. 3109.12(A) does not apply to this case. The magistrate cited R.C. 3109.051(B) and found status as a party defendant is not required to seek relief pursuant

to R.C. 3109.051(B) because the grandparent has standing by reason of the movant's relationship with the child and thus denied Ferguson's motion to be joined as a third-party defendant. The magistrate found that, based upon the evidence presented, Ferguson established an interest in the welfare of A.D.

{¶16} The magistrate further considered the totality of the circumstances, including the factors provided, to determine if visitation with Ferguson is in the best interest of A.D. The magistrate found: A.D. was not interviewed, so her wishes were not expressed to the court; A.D. previously had regular interaction with Ferguson and her cousins and there is no evidence A.D.'s previous interaction with them was harmful and not in her best interest; there is no evidence Ferguson has any prior criminal history or mental health or physical health concerns; Father supports the motion; and Mother opposes the motion, as she has expressed legitimate concerns that Ferguson is merely seeking time with A.D. to circumvent court requirements imposed upon Father for him to exercise parenting time with A.D. The magistrate stated that, pursuant to *Troxel*, Mother's decision regarding with whom A.D. should visit should be afforded "special weight." However, the magistrate also found that Mother's decision to prohibit all contact between A.D. and Ferguson is over-reactive to the facts and circumstances of the case and Mother's concerns can be addressed with court-ordered restrictions.

{¶17} The magistrate concluded, based on the evidence and testimony presented, it is in the best interest of A.D. to have visitation with Ferguson. The magistrate granted Ferguson visitation with A.D. pursuant to R.C. 3109.051(B) as follows: whenever the Mother and Ferguson may agree. If they cannot agree, then Ferguson may have companionship with A.D. on the first Wednesday of every month, from 6:00 p.m. until 8:00

p.m., provided that this Wednesday is not a holiday or the child's birthday. In that event, the companionship time shall occur on the following day – Thursday evening. This companionship time shall be exercised at a public location, such as a restaurant for dinner. Mother shall be permitted to attend and supervise the visitation. Father SHALL NOT be permitted to attend.

{¶18} Mother filed preliminary objections to the magistrate's decision on February 28, 2018. Mother argued: the magistrate's decision is contrary to the holding in *Troxel*, it is not in A.D.'s best interest to have visitation with Ferguson, and the magistrate should have completed an interview with A.D. prior to her decision. Mother objected to the following findings of the magistrate: Mother has not complied with statutory provisions requiring her to keep the court and Father advised of her current address; Mother has never filed a notice of intent to relocate as required by statute and the decree; based upon the evidence submitted, Ferguson has established an interest in the welfare of A.D.; the wishes and concerns of A.D. have not been expressed to the court; there was no evidence A.D.'s prior interaction and interrelationship with these family members was harmful and not in A.D.'s best interests; Mother's decision to prohibit all contact with Ferguson is over-reactive to the facts and circumstances of this case; and it is in the best interest of A.D. to grant visitation to Ferguson. Mother also moved the trial court to extend the time to submit supplemental objections until fourteen days after the transcript is filed.

{¶19} On March 14, 2018, Mother filed a motion for in-camera interview by the court with A.D.

{¶20} The transcript of the proceedings held on August 25, 2017 was filed on March 28, 2018.

**{¶21}** The trial court issued a judgment entry on April 27, 2018, noting that Mother did not file supplemental objections. As to Mother's objection to the magistrate's finding that Mother failed to keep the court and Father advised of her current address, the trial court stated a review of the record establishes Mother did not file a notice of intent to relocate with the court until after the hearing on August 25, 2017, but stated the notice was effective on August 26, 2014. The trial court determined the fact that Mother corrected her failure after the hearing does not alter the fact that, as of the date of the hearing, the magistrate's findings were correct.

**{¶22}** As to the magistrate's finding that A.D.'s wishes have not been expressed to the court, the trial court found A.D. was not interviewed, so the finding is correct. Further, the trial court stated that while Mother argued the magistrate should have conducted an in-camera interview with A.D., Mother did not request, either orally or in writing, an in-camera interview prior to the August 2017 hearing.

**{¶23}** Relating to the magistrate's findings which conclude it would be in the best interest of A.D. to grant Ferguson visitation, the trial court cited *Troxel* and *Harrold* and found Mother failed to cite the court to evidence within the transcript which contradicts the magistrate's findings. The trial court further found that the visitation order proposed by the magistrate limits the visitation in time and location.

**{¶24}** The trial court stated it independently reviewed the matter, overruled Mother's objections, and adopted and approved the magistrate's decision.

**{¶25}** Mother appeals the April 27, 2018 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶26} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION IN AWARDING VISITATION TO PATERNAL GRANDMOTHER.   THE TRIAL COURT ERRED IN FAILING TO GIVE THE CONSTITUTIONALLY REQUIRED WEIGHT TO MOTHER'S PARENTING DECISION.

{¶27} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION IN AWARDING VISITATION TO PATERNAL GRANDMOTHER.   THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE TRIAL COURT'S DECISION THAT AN AWARD OF GRANDPARENT'S VISITATION TO PATERNAL GRANDMOTHER IS IN THE CHILD'S BEST INTEREST.

{¶28} "III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION IN FAILING TO CONDUCT AN IN CAMERA INTERVIEW PRIOR TO THE MAGISTRATE RENDERING A DECISION, AND IN REFUSING TO GRANT APPELLANT'S MOTION FOR IN CAMERA INTERVIEW PRIOR TO THE JUDGE RULING ON APPELLANT'S OBJECTIONS.  THE COURT DID NOT HAVE ALL THE EVIDENCE BEFORE IT WHEN IT RENDERED A DECISION, BECAUSE IT REFUSED TO EXAMINE THE CHILD'S WISHES AND CONCERNS.

{¶29} "IV. THE TRIAL COURT DID NOT HAVE SUBJECT MATTER JURISDICTION, AND/OR ERRED IN THE EXERCISE OF JURISDICTION, WHEN IT ENTERTAINED A "MOTION FOR VISITATION" BY PATERNAL GRANDMOTHER. APPELLANT WAS UNMARRIED AT THE TIME OF THE CHILD'S BIRTH, AND SO ONLY R.C. 3109.12 WOULD HAVE BEEN APPLICABLE, REQUIRING PATERNAL GRANDMOTHER TO FILE A COMPLAINT IN THE JUVENILE COURT AS A PARTY-

PLAINTIFF, RATHER THAN FILE A 'MOTION' AS A NON-PARTY IN THE PARENTS' DIVORCE CASE.

{¶30} "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BECAUSE IT FAILED TO NOTE THAT APPELLANT WAS UNMARRIED AT THE TIME OF THE CHILD'S BIRTH, AND SO ONLY R.C. 3109.12 WOULD HAVE BEEN APPLICABLE, REQUIRING PATERNAL GRANDMOTHER TO FILE A COMPLAINT IN THE JUVENILE COURT AS A PARTY-PLAINTIFF, RATHER THAN FILE A 'MOTION' AS A NON-PARTY IN THE PARENTS' DIVORCE CASE. HOWEVER, R.C. 3109.12 IS UNCONSTITUTIONAL AS APPLIED IN THESE CIRCUMSTANCES UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION."

## I. & II.

{¶31} In her first assignment of error, Mother argues the trial court failed to give the constitutionally required weight to Mother's parenting decision pursuant to *Troxel* as Mother believes Father is a danger to A.D. In her second assignment of error, Mother contends the trial court's decision awarding visitation to Ferguson is against the manifest weight of the evidence.

{¶32} Decisions regarding child visitation generally lie within the trial court's sound discretion. *Rownd v. Marcelli*, 5th Dist. Stark No. 2015 CA 00154, 2016-Ohio-7142. This abuse of discretion standard applies in appellate review of a trial court's grant of grandparent visitation and the court's analysis of the statutory best interest factors. *Id*. However, the trial court's discretion must be exercised in a manner which best protects the interests of the child. *Id.* In order to find an abuse of discretion, we must determine

the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶33} Mother contends the trial court was required to give her opinion special weight, and, since she opposed visitation, it abused its discretion when it overruled her objections to the magistrate's decision and determined that visitation with Ferguson was in A.D.'s best interest. Mother contends the trial court failed to give her opinion opposing visitation the required "special weight" required by *Troxel v. Granville*.

{¶34} In *Troxel v. Granville*, the U.S. Supreme Court found a Washington statute, as applied to Granville and her family, violated the parent's due process right to make decisions concerning the care, custody, and control of her daughters. 530 U.S. 57, 147 L.Ed.2d 49, 120 S.Ct. 2054 (2000). The Court stated there is a presumption that fit parents act in the best interest of their children and that a trial court must accord some "special weight" to the parent's wishes. *Id.*

{¶35} In *Harrold v. Collier*, the Ohio Supreme Court considered *Troxel*'s application to Ohio's statutes regarding nonparental visitation. 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165. The Ohio Supreme Court found that Ohio courts are obligated to afford some special weight to the wishes of the parents of minor children when considering petitions for nonparental visitation and that Ohio's nonparental visitation statutes are narrowly tailored to serve the State's compelling interest in protecting a child's best interest. *Id.*

{¶36} In *Harrold*, the Ohio Supreme Court found that nothing in R.C. 3109.11, R.C. 3109.12, or R.C. 3109.051(D) "prevents the trial court from giving special weight to

the parent's wishes and concerns regarding visitation. In fact, special weight is required by R.C. 3109.051(D)(15), since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation.'" The Supreme Court found the special weight requirement is "not minimized simply because Ohio has chosen to enumerate 15 other factors that must be considered by the trial court in determining a child's best interest in the visitation context * * *." *Id.*

{¶37} The Ohio Supreme Court also stated that the presumption in *Troxel* is not irrebuttable and the parents' wishes are not the sole determinant of a child's best interest and the analysis of the best interest of the child does not end once a parent has articulated his or her wishes. *Id.* The Ohio Supreme Court reiterated that nothing in *Troxel* suggests that a parent's wishes should be placed before a child's best interest in *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146.

{¶38} In regard to the factor of parental wishes and concerns in this case, the magistrate recognized that Mother expressed legitimate concerns that Ferguson is merely seeking time with A.D. to circumvent court requirements imposed upon Father in order for him to exercise parenting time with A.D. The magistrate specifically cited *Troxel* and *Harrold*'s holding that Mother's decision regarding with whom A.D. should visit should be afforded "special weight." However, the magistrate also stated Mother's decision to prohibit all contact between A.D. and Ferguson was over-reactive to the facts in this case and found, based upon the factors, it was in A.D.'s best interest to have visitation with Ferguson. The magistrate ultimately decided A.D.'s best interest in having a relationship with Ferguson outweighed Mother's desire for no visits.

**{¶39}** The trial court also specifically cited *Troxel* and *Harrold* and expressly weighed Mother's opposition to visitation as a factor in its decision, thus protecting Mother's due process rights.

**{¶40}** It is evident that both the magistrate and trial court gave consideration to Mother's opinion and wishes. They were also required to consider the additional best interest factors. Both the magistrate and trial court also took Mother's concerns into account by crafting a narrow visitation order which provides two hours of visitation per month in a public place, with Mother supervising, and a strict prohibition against Father's attendance.

**{¶41}** Upon review, we find the magistrate's decision and trial court's judgment entry adopting that decision evince sufficient "special weight" consideration and analysis of the factor of parental wishes and concerns under R.C. 3109.051(D)(15). Mother's first assignment of error is overruled.

**{¶42}** Mother also argues the decision that visitation with Ferguson is in the best interest of A.D. is against the manifest weight of the evidence.

**{¶43}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck Equp. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. NoCA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶44} R.C. 3109.051(D) provides the factors that a trial court shall consider in determining visitation rights to a grandparent and these factors include: (1) the prior interaction and interrelationships of the child with the child's parents and other related persons, and with the person who requested the visitation; (2) the distance between the child's residence and the person requesting visitation's residence; (3) the child's school schedule; (4) the age of the child; (5) the child's adjustment to home, community, and school; (6) if the court has interviewed the child in chambers, the wishes and concerns of the child; (7) the health and safety of the child; * * * (9) the mental and physical health of all parties; (10) each parent's willingness to re-schedule missed time and willingness of the person who requested the visitation to re-schedule; * * * (12) whether the person requesting visitation previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or neglected child; * * * (15) the wishes and concerns of the child's parents as expressed by them to the court; and (16) any other factor in the best interest of the child.

{¶45} The magistrate issued detailed findings of fact that are supported by the testimony at the evidentiary hearing. The magistrate then reviewed the totality of the circumstances, including the pertinent best interest factors. The trial court addressed Mother's objections to the magistrate's findings with regards to the best interest factors and determined there was no evidence within the transcript of the proceedings that contradicted the magistrate's findings. The trial court further found that the visitation schedule proposed by the magistrate permits Mother to be involved with the visitation and also limits the visitation in time and location as to not overly interfere with Mother's parenting time.

{¶46} Mother's disagreement with the trial court's result does not lead us to the conclusion that the magistrate and trial court failed to properly consider the pertinent statutory factors, including the special weight to be given R.C. 3109.051(D)(15), and we find there is competent and credible evidence to support the magistrate and trial court's determination that visitation with Ferguson is in the best interest of A.D. Mother's second assignment of error is overruled.

III.

{¶47} In her third assignment of error, Mother argues the trial court erred and abused its discretion in failing to conduct an in-camera interview prior to the magistrate rendering a decision, and in refusing to grant her motion for an in-camera interview prior to the trial court ruling on appellant's objections. Mother cites R.C. 3109.04(B)(1) in support of her argument and also contends since the trial court may hear additional evidence pursuant to Civ.R. 53(E)(4)(b), the trial court should have interviewed A.D. and the failure to do so constitutes reversible error.

{¶48} We first find that Mother did not request that the magistrate conduct an in-camera interview prior to the issuance of the decision either in writing or at the evidentiary hearing. Thus, it was within the magistrate's discretion as to whether to interview A.D. regarding her wishes and concerns pursuant to R.C. 3109.051(C). We find the magistrate's exercise of discretion not to conduct an in-camera interview with A.D. when no party requested it was not unreasonable, arbitrary, or unconscionable.

{¶49} Mother did request that the trial court conduct an in-camera interview prior to the issuance of its ruling on her objections to the magistrate's decision and argues the

trial court abused its discretion in not taking such additional evidence pursuant to Civ.R. 53 before ruling on her objections.

{¶50} In-camera interviews are required, upon the request of either party, when a court is considering the allocation or modification of parental rights and responsibilities under R.C. 3109.04(B)(1). However, this case does not involve the allocation of parental rights and responsibilities; rather it involves visitation rights of a grandparent when one parent has been designated the legal custodian and residential parent. As such, this case is not governed by R.C. 3109.04, but by R.C. 3109.051. Relative to in-camera interviews, R.C. 3109.051(C) provides, "the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns."

{¶51} Mother cites several cases in support of her contention that the failure of the trial court to conduct an in-camera interview of A.D. after Mother's request constitutes reversible error. However, the cases cited by Mother all deal with the allocation of parental rights and responsibilities pursuant to R.C. 3109.04 and/or whether the trial court is required to make a record of the in-camera interview. In this case, the allocation of parental rights and responsibilities is not at issue. As this Court has previously stated, "unlike R.C. 3109.04(B)(1), R.C. 3109.051(C) does not require the court to conduct an in-camera interview where one is requested. Instead, it leaves the decision to the court's discretion." *Jagodzinski v. Abdul-Khaliq*, 5th Dist. Licking No. 17-CA-22, 2018-Ohio-1898.

{¶52} Upon review of the record, we find the trial court did not err or abuse its discretion in failing to conduct an in-camera interview of A.D.

IV.

**{¶53}** In her fourth assignment of error, Mother contends the trial court lacked subject matter jurisdiction when it entertained Ferguson's motion.  Mother argues since she was not married at the time of A.D.'s birth, only R.C. 3109.12 would have been applicable, requiring Ferguson to file a complaint in Juvenile Court.

**{¶54}**  Jurisdiction is the trial court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003 (1998); *Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841 (1972).  Subject matter jurisdiction is defined as a court's power to hear and decide cases.  *Pratt v. Hurley*, 102 Ohio St.3d 81, 806 N.E.2d 992 (2004); *Wells Fargo Bank, Nat'l. Assn. v. Elliott*, 5th Dist. Delaware No. 13 CAE 03 0012, 2013-Ohio-3690.

**{¶55}**  Three separate Ohio Revised Code Sections govern nonparental visitation rights and minor children:  R.C. 3109.11, 3109.051(B)(1), and R.C. 3109.12.  R.C. 3109.11 applies if either the father or mother of an unmarried minor child is deceased.

**{¶56}**  The trial court in this case granted Ferguson visitation with A.D. pursuant to R.C. 3109.051(B)(1) which provides as follows:

> In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent * * * if all of the following apply: (a) the grandparent * * * files a motion with the court seeking companionship or visitation rights; (b) the court determines that the grandparent * * * has an interest in the welfare of the child; and (c) the court

determines that the granting of the companionship or visitation rights is in the best interest of the child.

{¶57} Pursuant to R.C. 3109.051(B)(2), a motion under (B)(1) may be filed during the pendency of the divorce, "or, if a motion was not filed at that time or was filed at that time and the circumstances of the case have changed, at any time after a decree or final order is issued in the case."

{¶58} R.C. 3109.12 provides that,

If a child is born to an unmarried woman * * * and if the father of the child has acknowledged the child and that acknowledgment has become final * * * or has been determined in an action under Chapter 3111 of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation with the child.

{¶59} Despite Mother's contention, we find the trial court did not err in finding R.C. 3109.051(B)(1) applicable in this case. The statute plainly permits, in a divorce proceeding that involves a child, a grandparent to file a motion with the court seeking companionship or visitation rights. In this case, there is a divorce proceeding that involves a child. Ferguson is the grandparent of that child. Thus, she is permitted to file a motion with the court seeking visitation rights. Pursuant to R.C. 3109.051(B)(2), she may file the motion after a decree or final order is issued in the case.

{¶60} There is no requirement in either R.C. 3109.051(B)(1) or R.C. 3109.12 that one section applies to the exclusion of the other. Arguably, both R.C. 3109.051(B)(1) and R.C. 3109.12 are applicable in this case, as Mother was unmarried when she gave birth and there is a divorce proceeding that involves a child. Thus, Ferguson could request visitation under either R.C. 3109.12 or R.C. 3109.051(B)(1). *Oliver v. Feldner*, 7th Dist. Noble No. CA-290, 2002-Ohio-3209. The trial court's standard of review is the same under both statutes, the best interest standard, guided by the factors in R.C. 3109.051(D). *Id.* Further, there is no language in R.C. 3109.12 requiring a complaint under that section be filed in a specific division of the court. See *Stout v. Kline*, 5th Dist. Richland No. 96-CA-71, 1997 WL 210990 (March 28, 1997) (finding Domestic Relations Court had subject matter jurisdiction to hear a R.C. 3109.12 complaint).

{¶61} We find that the Domestic Relations Court has subject matter jurisdiction in this case. R.C. 3105.11 provides that domestic relations courts have "full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." R.C 3109.051(B)(1) grants a domestic relations court subject matter jurisdiction to make a nonparent visitation order in a divorce case. *In re K.M.-B., T.M., E.M.*, 6th Dist. Lucas No. L-15-1037, 2015-Ohio-4626. Specific to Delaware County, in the code section detailing the designation of domestic relations, juvenile, and probate duties, R.C. 2301.03(EE) states that, in Delaware County, the judge of the court of common pleas "whose term begins on January 1, 2017" shall "have the same powers and jurisdiction" as the other judges of the county and shall be designated as the judge of the division of domestic relations. "Divorce, dissolution of marriage * * * including any post-decree proceedings, and cases involving questions of paternity, custody, visitation * * *

regardless of whether those matters arise in post-decree proceedings or involve children both between unmarried persons, shall be assigned to that judge, except cases that for some special reason are assigned to another judge of the court of common pleas." *Id.* We finally note that the divorce decree in this case specifically states, "the court finds it has exclusive jurisdiction over the parties and their child and over the divorce hereto."

**{¶62}** Mother's fourth assignment of error is overruled.

V.

**{¶63}** In her final assignment of error, Mother argues the trial court erred to her prejudice in failing to note that she was unmarried at the time of A.D.'s birth and thus only R.C. 3109.12 would have been applicable and would have required Ferguson to file a complaint in juvenile court. Mother further contends that even if Ferguson had filed a complaint in juvenile court pursuant to R.C. 3109.12, it would be unconstitutional as applied in this matter.

**{¶64}** Mother is correct that the trial court did not note that she was unmarried at the time of A.D.'s birth. However, as detailed above, this omission is not prejudicial to Mother. Simply because Mother was unmarried at the time of A.D.'s birth does not mean Ferguson was required to file a complaint in juvenile court pursuant to R.C. 3109.12. There is no requirement in either R.C. 3109.051(B)(1) or R.C. 3109.12 that one section applies to the exclusion of the other, or that R.C. 3109.12 applies to the exclusion of R.C. 3109.051(B)(1) if the birth mother is not married at the time of the child's birth. Additionally, there is no requirement in R.C. 3109.12 that the complaint must be brought in juvenile court. Further, there is no prejudice to Mother by the trial court's omission

because the standard of review is the same under both R.C. 3109.12 and R.C. 3109.051(B)(1), the best interest standard, guided by the factors in R.C. 3109.051(D).

**{¶65}** As to Mother's argument that R.C. 3109.12 is unconstitutional as applied in this case, Mother did not raise the issue of the constitutionality of R.C. 3109.12 in the trial court. As stated by the Supreme Court, "the failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue" and "therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986). However, we note that the case cited by Mother is factually distinguishable from this case. In *Rugola-Dye v. Dye*, we found R.C. 3109.12 was unconstitutional as applied to the facts of that case because, while the mother was unmarried when the child was born, she subsequently married the father of the child and the parties were married at the time the grandparent's visitation complaint was filed. 5th Dist. Delaware No. 08 CAF 0038, 2009-Ohio-2471. This case is factually distinguishable because the parties were not married at the time Ferguson filed her motion.

**{¶66}** Mother's fifth assignment of error is overruled.

{¶67}  Based on the foregoing, Mother's assignments of error are overruled.  The April 27, 2018 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division, overruling her objections to and adopting and approving the magistrate's decision of February 14, 2018 is affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur