**[Cite as *In re A.B.*, 2026-Ohio-83.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: A.B. | Case No. 2025 CA 00039 |
| | <u>Opinion and Judgment Entry</u> |
| | Appeal from the Fairfield County Court of Common Pleas, Juvenile Division, Case No. CU-2024-0004 |
| | Judgment: Affirmed |
| | Date of Judgment Entry: January 12, 2026 |

**BEFORE:** Craig R. Baldwin, William B. Hoffman, Robert G. Montgomery, Appellate Judges

**APPEARANCES:** Julia Tabor, Conrad/Wood Law, LLC, for Appellee, Monica Lampron; Joel Rovito, for Appellant, Laura Shufeldt; Rossia Meranda, The Meranda Law Firm, LTD, Guardian ad litem of A.B.; Amy Lewis, Mother, pro se; James Blackburn, II, Father, pro se.

OPINION

*Hoffman, J.*

{¶1} Appellant Laura Shufeldt appeals the judgment entered by the Fairfield County Common Pleas Court, Juvenile Division, awarding legal custody of her minor grandchild A.B. to Appellee Monica Lampron.

STATEMENT OF THE FACTS AND CASE

{¶2} A.B. was born in 2016. In 2017, A.B.'s biological mother (hereinafter "Mother") began leaving A.B. and a sibling with Appellee on a regular basis. Both Mother and A.B.'s biological father (hereinafter "Father") have substance abuse issues. Mother met Appellee through Appellee's daughter, who was an employee of the daycare the children attended. In 2018, A.B. began living with Appellee more often than she lived with Mother. A.B. continued to reside with Appellee regularly through early 2024.

{¶3} On March 1, 2024, Mother picked up A.B. to spend the night in a hotel for a sibling's birthday. A.B.'s maternal grandmother called Appellee on March 4, 2024, asking Appellee to pick up Mother's children, including A.B., because Mother had overdosed in front of the children.

{¶4} On March 29, 2024, Appellee filed a complaint seeking legal custody of A.B. Appellant filed a complaint for legal custody of A.B. on May 30, 2024. The case proceeded to a trial in the Fairfield County Common Pleas Court, Juvenile Division.

{¶5} At trial, Mother and Father stipulated they were unfit to have A.B. in their care. Appellee presented evidence A.B. is involved in dance and cheerleading while residing in her home and regularly sees a mental health counselor. While there are a

number of adult relatives of Appellee living in the home, A.B. had her own bed in a room she shares with her sibling.

{¶6} Appellant expressed her concerns with the living conditions at Appellee's home. Although she acknowledged her involvement with A.B. had been minimal until this case began, she was concerned with the number of Appellee's adult relatives who lived in the home, feared A.B. was sleeping in the same bed with an adult man with dementia, heard corporal punishment had been used on A.B. without Appellee's knowledge, heard Appellee's husband drinks alcohol in the home, and believed there is a lack of supervision of A.B.. However, most of Appellant's concerns came from information provided by Mother, who the trial court found to be not credible. Appellant was surprised to discover Father used drugs, and allowed Father to drive with A.B. in the car because she was unaware Father was testing positive for drugs.

{¶7} The guardian ad litem (hereinafter "GAL") appointed in the case submitted a report which was admitted into evidence without objection. The GAL believed the best interests of A.B. would be served by an award of legal custody to Appellee, with Appellant given visitation. The GAL testified she had observed A.B. in Appellee's care, and the interactions between the two were loving and caring. A.B. told the GAL she wanted to live with Monica. While the GAL had no concerns about Appellant's home, she noted A.B. and Appellant were still building a relationship.

{¶8} The magistrate recommended custody be awarded to Appellee, with Appellant given visitation the first weekend of every month. Appellant filed objections to the magistrate's report. The trial court overruled the objections and entered judgment in

accordance with the magistrate's recommendation.  It is from the September 9, 2025 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I. THE MAGISTRATE ERRED IN AWARDING MONICA LAMPRON RESIDENTIAL PARENT AND LEGAL CUSTODIAN.

II. THE MAGISTRATE ERRED IN RESTRICTING PATERNAL GRANDMOTHER'S VISITATION TO INCLUDE ONLY ONE (1) WEEKEND PER MONTH AND RESTRICTED HOLIDAY TIME.

III. THE MAGISTRATE ERRED IN TAKING INTO ACCOUNT THE GUARDIAN AD LITEM REPORT WHEN THE GUARDIAN AD LITEM FAILED TO MEET THE REQUIREMENTS OF SUPREME COURT RULE 49.

IV. THE MAGISTRATE ERRED BY NOT INCLUDING PATERNAL GRANDMOTHER AS NON-RESIDENTIAL PARENT FOR PURPOSES OF STATUTORY NOTICE.

**{¶9}**   This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part:

(E) Determination and judgment on appeal.

The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason

for the court's decision as to each error to be in brief and conclusionary form.

The decision may be by judgment entry in which case it will not be published in any form.

{¶10} This appeal shall be considered in accordance with the aforementioned rule.

I.

{¶11} In her first assignment of error, Appellant argues the trial court erred in awarding custody of A.B. to Appellee. We disagree.

{¶12} An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 2012-Ohio-5514, ¶ 7 (8th Dist.).

{¶13} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree a juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.,* 2016-Ohio-7994, ¶ 18 (9th Dist.).

{¶14} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 2011-Ohio-3361, ¶ 14. Accordingly, we review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. *In re H.J.H.*, 2019-Ohio-116, ¶ 3 (1st Dist.). An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A

juvenile court's decision regarding a child's best interest in a legal custody proceeding is not unreasonable if it is supported by competent, credible evidence. *In re K.R. 1,* 2022-Ohio-1768, ¶ 17 (5th Dist.).

{¶15} R.C. 3109.04(F)(1) sets forth the factors which the trial court applied in the instant case in determining the best interest of the child:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶16} Upon objections to the magistrate's report, the trial court reviewed the applicability of each statutory factor and the evidence presented regarding each factor. Judgment Entry, 9/9/25, pages 16-21. While Mother and Father preferred the minor child be placed in the care of Appellant, they had both stipulated they were unfit to care for A.B., and admitted they had lied to Appellant, Appellee, and to A.B.'s maternal grandmother in the past. Extensive testimony was presented regarding the history of Mother leaving A.B. in the care of Appellee. A.B. refers to Appellee as "mom." Tr. 255. A.B.'s counselor testified Appellee and A.B. were bonded. The testimony reflected while Appellant's bond with A.B. had grown during the pendency of this litigation, Appellant did not have a strong bond with A.B. because she had little contact with A.B. prior to this litigation. Further, Appellant admitted she gave up part of her court-ordered parenting time to A.B.'s maternal grandmother.

{¶17} A.B. was enrolled in school at her home with Appellee and had adjusted well. A.B. previously had difficulty in school, but Appellee involved A.B. with tutoring and helps her with schoolwork. A.B. is involved in cheerleading and dance, and Appellee took her to counseling appointments. If granted custody, Appellant intended to enroll A.B. in a private Christian school in a community where A.B. had no current interaction.

{¶18} While Appellant expressed concerns about the mental and physical health of adults living in Appellee's home, there was testimony to the contrary, and Appellant admitted her concerns were reported to her by Mother, who the court found was not truthful.

{¶19} Appellee testified she informs all parties of events for A.B. and has coordinated schedules with all parties involved. Appellant testified she believed Mother and Father should have parenting time solely at her discretion, and Appellee should only have supervised visitation involving a counselor.

{¶20} We find the trial court's conclusion an award of legal custody to Appellee was in the best interest of A.B. was supported by a preponderance of the evidence, and the trial court did not abuse its discretion in awarding custody to Appellee.

{¶21} The first assignment of error is overruled.

II.

{¶22} Appellant argues the trial court erred in granting her only one weekend of visitation per month, as well as limited holiday visitation. We disagree.

{¶23} Decisions regarding child visitation generally lie within the trial court's sound discretion. *Rownd v. Marcelli*, 2016-Ohio-7142, ¶ 14. Therefore, we apply an abuse-of-discretion standard on review of a trial court's decision regarding grandparent visitation. *Id*.

{¶24} Appellant argues the parents wished her to have more visitation with A.B. However, as found by the trial court when ruling on Appellant's objections to the magistrate's report, the parents in the instant case stipulated they were unfit. Therefore,

we find the trial court did not abuse its discretion in limiting the weight it gave to the parents' wishes in the instant case.

{¶25} R.C. 3109.051(D) sets forth the factors the trial court is to consider in determining the best interest of the child regarding visitation:

(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child;

whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

**{¶26}** In considering the best interest of A.B. regarding visitation, the trial court found A.B. is active in extracurricular activities and has friends in the community where she resides with Appellee. A.B. has a sibling who resides with her in Appellee's home, and also has a sibling who lives with her maternal grandmother. A.B. spends occasional weekends visiting with Mother's family and her sibling who resides with the maternal grandmother. Testimony was presented A.B. resisted parenting time with Appellant, and the GAL recommended one weekend per month of visitation with Appellant. We find the trial court did not abuse its discretion in its award of visitation time.

**{¶27}** The second assignment of error is overruled.

III.

**{¶28}** In her third assignment of error, Appellant argues the trial court erred in considering the report of the GAL because she did not complete her required duties pursuant to Superintendence Rule 48.03. We disagree.

**{¶29}** Appellant argues the GAL failed to interview all of the adults in Appellee's residence, failed to obtain Appellee's father's medical records, and failed to fully investigate all of Appellant's concerns.

**{¶30}** The GAL testified at trial and was available for cross-examination concerning the extent of her investigation. Regarding Appellant's objection to the magistrate's consideration of the guardian's report, the trial court found:

> Paternal Grandmother asserts that the Guardian ad Litem failed to complete all her duties pursuant to the Rules of Superintendence for the Court of Ohio Rule 48.03, specifically failing to interview all adults in Monica Lampron's residence and not obtaining the medical records of Monica Lampron's father, Walter Costa. The GAL testified she had been to Monica Lampron's home several times and spoken to/met all the members of Monica Lampron's home. She also testified as to investigating concerns regarding Walter Costa. (*Trial Transcript pages 684-685 and Trial Transcript page 694, 21-24, page 695, 1-14*). There was no valid concern after investigating Walter Costa to subpoena his medical records. The GAL also testified as to her investigation regarding concerns of Tony, Monica's husband, drinking to excess. (*Trial Transcript 698, 2-11*). It was also testified to by Alene Costa that the Court Investigator Report was inaccurate regarding a 2008 arrest for domestic violence. (*Trial Transcript 300*).

Even if the Court found she did not comply with every duty in the Rules of Superintendence, the Rules of Superintendence do not require the Court to disregard the GAL's report in its entirety.

**{¶31}** Judgment Entry, 9/9/25, ¶¶ 100-101.

**{¶32}** We agree with the reasoning of the trial court and find the court did not err in considering the report of the GAL. The third assignment of error is overruled.

IV.

**{¶33}** In her fourth assignment of error, Appellant argues the trial court erred in failing to include her as a non-residential parent for purposes of statutory notices. We disagree.

**{¶34}** R.C. 3109.051(H) provides non-residential parents are entitled to access, under the same terms and conditions as the residential custodian, any record related to the child and to which the residential custodian of the child legally is provided access.

**{¶35}** Appellant is not a non-residential parent of A.B., and she cites no legal authority which would require the trial court to allow her access to information available solely to the legal custodian and to Mother and Father. We find the trial court did not err in failing to include Appellant as a "non-residential parent" for purposes of receiving access to A.B.'s records.

**{¶36}** The fourth assignment of error is overruled.

**{¶37}** The judgment of the Fairfield County Common Pleas Court, Juvenile Division, is affirmed.  Costs are assessed to Appellant.

By: Hoffman, J.

Baldwin, P.J. and

Montgomery, J. concur